UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| HEARTWOOD, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:04CV137 HEA |
| | ) |
| UNITED STATES FOREST SERVICE, et al., | ) |
| | ) |
| Defendants. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross Motions for Summary Judgment, [Doc. No.'s 20 and 22]. For the reasons set forth below, defendants' Motion is granted and plaintiffs' Motion is denied.

Plaintiffs filed this declaratory judgment action seeking judicial review of defendant's approval of the "Northeast Corner Vegetation Management Project," (NE Corner Project) on the Mark Twain National Forest in Shannon County, Missouri. Plaintiffs seek review under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* (APA) alleging that defendants violated the Appeals Reform Act, 16 U.S.C. § 1612 (note), the National Environmental Policy Act, 42 U.S.C. § 4321 *et*

*seq.* and the National Forest Management Act, 16 U.S.C. § 1604(g)(3)(F) (NFMA).[1]

Plaintiffs contend that the Forest Service arbitrarily and capriciously decided not to provide an opportunity to comment on the Environmental Assessment as required by the APA and the ARA; the Forest Service failed to make a determination that clearcutting was the "optimal method" of achieving the goals of the management plan, as required by the NFMA; and the Forest Service violated the NEPA by not examining reasonable alternatives to the clearcut method such as uneven-aged management.

## FACTS AND BACKGROUND

The Northeast Corner Project is a management plan covering 7,414 acres of forest land in the Mark Twain National Forest. The Project activities include timber harvesting, the designation of additional old growth forest, reforestation, prescribed burning, and road maintenance and reconstruction. The Northeast Corner Project is designed to move the project area's existing conditions toward the desired future conditions described in the Mark Twain National Forest Land and Resource Management Plan. (Forest Plan). Specifically, the Plan calls for clearcutting 338 acres; seed tree seed cut on 88 acres; shelterwood seed cut on 33 acres; site

---

[1] On September 20, 2005, the Court approved the parties' stipulation to dismiss Count IV and most of Count V.

preparation cutting for natural regeneration on 312 acres; conduct shelterwood preparatory cutting on 57 acres; salvage cut 114 acres; commercially thin 1,638 acres; pre-commercially thin 439 acres; uneven-aged management on 431 acres; designation of 179 acres as old growth; and the prescribed burning of 692 acres.

The application of even-aged practices--clear cutting, seed-tree cutting, and shelterwood seed cutting--produce a stand of trees approximately the same size and age. The application of uneven-aged management practices produce a stand of trees of various sizes and ages. Uneven-aged practices include single tree selection, which involves the periodic removal of individual trees, and group selection, which removes small groups (.25 acre to 2 acres) of trees. The Forest Plan envisions that both uneven- and even-aged systems will be utilized on the MTNF. The Forest Plan explains that "[t]he decision on which harvest cutting method, *i.e.* clearcutting, shelterwood, seed tree, or selection, to use in any given stand is based on management objectives, stand conditions, and the silvical characteristics of the species present or desired." In developing the Northeast Corner Project, the Forest Service Silviculturist, Don Fish conducted field reviews of the project area. Mr. Fish prepared some notes on his reviews. The Decision Notice for the Project documents the agency's determination that the 338 acres of clear cutting authorized by the Northeast Project "is the optimum treatment to achieve management

objectives for these areas."

On January 31, 2003, the Forest Service began soliciting for comments on the Northeast Corner Vegetation Management Project, (Northeast Corner Project), by issuing a cover letter and a Scoping Report. The Scoping Report was distributed to interested members of the public, including representative of both plaintiffs. The Forest Service had previously listed the Northeast Corner Project on the Forest's Schedule of Proposed Actions, beginning in July 2002. A legal notice was published in the Current Wave Newspaper on February 5, 2003.

In the Scoping Report, the Forest Service explained that the "proposed action is needed due to declining habitat diversity, forest health and vigor, and to meet the desired future conditions as identified in the Mark Twain National Forest Plan." The Scoping Report identifies five primary needs for the proposed action: (1) establish early successional habitat (0-9 year old forest vegetation); (2) provide stands that can provide old growth habitat now or in the future; (3) maintain open and semi-open habitat conditions; (4) provide for healthy, resilient forests; and (5) provide a safe forest transportation system for management and reasonable public access. The Forest Service explained how the proposed actions were developed to correspond with these objectives. The Scoping Report explained the types of proposed timber harvest that the Forest Service was proposing and provided a table,

spreadsheets, and maps describing the proposed treatments' exact location and size. The agency fully disclosed that the proposed action included clearcutting, seed tree seed cutting, and shelterwood seed cutting and identified the particular stands of trees where this type of harvest was proposed. The Scoping Report identified preliminary issues to be considered during the agency's analysis of the Northeast Corner Project as well as those to be used for developing a reasonable range of alternatives to the proposed action.

Heartwood submitted twenty pages of comments. Heartwood suggested that "[t]he Forest Service needs to fully develop and consider uneven-aged management alternatives."

At an April 28, 2003 meeting, the Forest Service Interdisciplinary Team addressed the issues that had been identified during the scoping of the Northeast Corner Project. Comments and Concerns submitted by Heartwood were addressed. The Team noted that uneven-aged management is "addressed during processes or analyses routinely conducted by the ID Team."

The Forest Service provided a second comment opportunity in October 2003 when the agency circulated the Northeast Corner Proposed Action For 30-day Comment ("Proposed Action Notice"). The agency explained that "[c]omments must be postmarked or received within 30 days of the date the legal notice is

published in the Current Wave newspaper of Eminence, Missouri." In addition, the Forest Service was clear that "[o]nly those who submit timely and substantive comments will be accepted as appellants."

The Proposed Action Notice included a section titled "PURPOSE OF AND NEED FOR ACTION" and set forth the range of alternatives that the agency planned to consider pending substantive comments received during the 30 day comment period. The agency explained that a No Action alternative (Alternative 1) would be considered, along with two action alternatives. Alternative 2 was the alternative previously described in the agency's Scoping Report; Alternative 3 was developed in response to public comments that advocated a reduction in prescribed burning and the creation of uninterrupted blocks of old growth. In addition to the detailed narrative description of the project alternatives to be considered, the Proposed Action Notice included a chart to facilitate comparisons between the three alternatives.

In the Proposed Action Notice, the agency set forth that by increasing the amount of 0-9 year old forest habitat, the action alternatives would move the project area toward compliance with the Forest Plan's objective of maintaining 8%-15% of this habitat forest-wide. In contrast to this objective, "[c]urrent 0-9 year old woodland habitat for the project area is 0% (based on the planning period of 1998-

2007; the management area being 1%)."

The Proposed Action Notice also included maps and spreadsheets that identified the exact location of where each type of harvesting was proposed. The Forest Service set forth why even-aged management was proposed for certain stands: "A Certified Silviculturist has determined that stand conditions make proposed even-aged regeneration harvests appropriate to those stands and that clearcutting is the optimal method on acres proposed for this even-aged regeneration method."

The agency further documented its preliminary analysis of how each of the three Northeast Corner Project alternatives would affect soil/water, air quality, wildlife, vegetation, biodiversity, visual qualities, recreation, economics, heritage resources, and transportation systems. A chart showing how each proposed alternative would contribute toward the stated Forest Plan's objectives was included in the Proposed Action Notice. The agency also included a chart showing how the alternatives respond to issues raised by the public in comments on the Scoping Report.

In response to the Proposed Action Notice, plaintiffs submitted 21 pages of comments. The Forest Service considered the comments it received on the proposed action. The Responsible Official did not respond to plaintiffs in writing to

their comments.

The agency then prepared a detailed Environmental Assessment (EA) of the Project in order to determine whether it was necessary to prepare a more detailed Environmental Impact Statement (EIS). The EA was posted on the Forest Service's website. The Forest Service also sent out letters announcing the availability of the EA. A legal notice was published in the Current Wave newspaper announcing the availability of the EA on the website or in hard copy upon request.

The Forest Service determined that no EIS was required for the Northeast Corner Project and issued a Decision Notice and Finding of "No Significant Impact. This determination was based on the agency's consideration of the factors provided for in 40 C.F.R. § 1508.27.

The Forest Service evaluated in detail the three Project alternatives that had been previously described in the Proposed Action Notice. The agency also considered four additional alternatives: (1) an alternative to change the area's management prescription; (2) an alternative that reduced the use of even-aged management techniques; (3) a "no logging" alternative; (4) an alternative that would implement only single tree selection harvest. These alternatives were evaluated by the agency, but eliminated from detailed consideration for a variety of reasons,

described in the EA.[2]

On February 20, 2004, the District Ranger Jerry Bird issued a Finding of No Significant Impact and signed the Decision Notice approving the Northeast Corner Project.. The Decision Notice and EA were made available to the public and posted on the Forest Service's website. On April 19, 2004, plaintiffs filed an administrative appeal of the Decision Notice. On June 3, 2004, the Forest Service Appeal Deciding Officer Michael Sanders affirmed the Northeast Corner Decision Notice and EA. On June 18, 2004, plaintiff filed a 60 day notice of intent to file a citizen's ESA lawsuit.

## STANDARD OF REVIEW

Summary Judgement is "particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2733 (3d ed. 1998). Judicial Review of administrative decisions is governed by the Administrative Procedures Act. 5 U.S.C. § 706. Under the APA, the Court's review of an agency decision is limited. The Court is only permitted to set aside agency action that is "arbitrary, capricious, and an abuse of discretion, or otherwise

---

[2] As explained in response to plaintiff's administrative appeal, reference to the "Eastwood Project" area instead of the "Northeast Corner Project" area was an "editorial error. The analysis and supporting documentation is site specific to the NE Corner Project area."

not in accordance with law." 5 U.S.C. § 706(2)(A). *Voyageurs National Park Ass.'n v. Norton*, 381 F.3d 759, 764 (8th Cir. 2004). A reviewing court must "engage in a substantial inquiry" of the administrative record before the agency, but "the ultimate standard of review is a narrow one," and the reviewing court "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971), *overruled on unrelated grounds, Califano v. Sanders*, 430 U.S. 99, 105 (1977).

It is clear without question that:

> An arbitrary and capricious action is one in which: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Cent. S.D. Coop. Grazing Dist. v. Sec'y of the United States Dep't. of Agric.,* 266 F.3d 889, 894 (8th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "If an agency's determination is supportable on any rational basis, we must uphold it." *Voyageurs Nat'l Park Ass'n,* 381 F.3d at 763. "When the resolution of the dispute involves primarily issues of fact and analysis of the relevant information 'requires a high level of technical expertise, we must defer to the informed discretion of the responsible federal agencies.'" *Friends of the Boundary Waters Wilderness v. Dombeck,* 164 F.3d 1115, 1128 (8th Cir.1999) (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

In re Operation of Missouri River System Litigation 421 F.3d 618, 628 (8th Cir.

2005).

## DISCUSSION

## Administrative Procedures Act and the Appeals Reform Act

Plaintiffs contend that the Forest Service violated the APA and the ARA in accepting comments on the Scoping Report and the Proposed Action Notice rather than on the EA. The ARA requires the Forest Service to provide the opportunity for comments on any proposed projects and activities.

> **(a) In general**.--In accordance with this section, the Secretary of Agriculture, acting through the Chief of the Forest Service, shall establish a notice and comment process for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. 1601 et seq.) and shall modify the procedure for appeals of decisions concerning such projects.
>
> **(b) Notice and comment.--**
> **(1) Notice.--**Prior to proposing an action referred to in subsection (a), the Secretary shall give notice of the proposed action, and the availability of the action for public comment by–
> (A) promptly mailing notice about the proposed action to any person who has requested it in writing and to persons who are known to have participated in the decisionmaking process; and,
> (B)(I) in the case of an action taken by the Chief of the Forest Service, publishing notice of action in the Federal Register; or
> (ii) in the case of any other action referred to in subsection (a), publishing notice of the action in a newspaper of general circulation that has previously been identified in the Federal Register as the newspaper in which notice under this paragraph may be published.
> **(2) Comment.--**The Secretary shall accept comments on the

> proposed action within 30 days after publication of the notice in accordance with paragraph (1).

16 U.S.C. 1612 (note).

Under the appeal regulations implementing the ARA, the responsible agency official is given discretion to determine the most effective timing for soliciting public comment. 36 C.F.R. § 215.5(a)(2). In this case, it was determined that comments should be received early in the decision making process. The opportunity for public input was provided in January, 2003. At that time, the Forest Service circulated the Scoping Report for public comment. The Scoping Report set forth the purpose and need for the proposed Projects and provided details of the proposed activities. The types of proposed timber harvest, including the treatments' location and size, were provided. The Forest Service provided another opportunity for comment through the circulation of the Proposed Action Notice in October, 2003. The Proposed Action notice provided the public with explanations of the proposed action. Included in the Notice were maps and spreadsheets that allowed for comparison between the proposed action alternatives. Plaintiffs argue that defendants have failed to satisfy the requirements of the APA and the ARA because they have not demonstrated that the decision to provide the early comment period was the <u>most</u> effective, rather than allowing comment after the preparation of the EA. According

to plaintiffs, in order to determine if the timing was the most effective, one must compare the effectiveness of having two early comment periods to the effectiveness of having one early one and another comment period on the EA (or the functional equivalent of an EA).  This reasoning, however, requires the Court to read into the regulations a requirement that the responsible official must perform specific analyses in making the decision on the most effective timing of the public comments.  No such requirement exists in the regulations.  The appeals regulations expressly leave the determination of the "most effective timing for publishing the legal notice of the proposed action and opportunity to comment" to the responsible Forest Service official 36 C.F.R.§ 215.5(a)(2).   The record is clear that the Forest Service examined its duty to provide the most effective time within which to afford the opportunity to submit comments.  The benefits of receiving comments earlier in the process are plainly set forth in the record.  Indeed, comments were received during both comment periods, *i.e.*, in response to the Scoping Report and in response to the Proposed Action Notice.  While plaintiffs would rather have had the comment period after the EA, there is no requirement for such.  Plaintiffs submitted comments on both the Scoping Report and the Proposed Action Notice.  Nothing in either the

ARA or the NEPA,[3] requires defendants to circulate the EA for public comment. See *Alliance to Protect Nantucket Sound v. United States Dept. Of Army*, 398 F.3d 105, 115 (1st Cir. 2005); *Greater Yellowstone Coalition v. Flowers*, 359 F.3d 1257, 1279 (10th Cir. 2004); *Como-Falcon Cmty. Coalition v. Dept. of Labor*, 609 F.2d 342, 345 (8th Cir. 1979).

Plaintiffs further argue that defendants have failed to address the context of the determination, urging that the Forest Service should be required to explain its determination. Plaintiffs admit there is no requirement for formal findings, but argue that the agencies must explain their decision. There is no such requirement in the statutes nor in the implementing regulations. *Volpe*, 401 U.S. at 417. Plaintiff's argument that *Volpe* requires explanation by an agency is ill-advised in light of the fact that in *Volpe*, the administrative record was not before the Court. In this case, the administrative record before the court establishes, without question, that the decision as to the most effective timing for public comment was determined in accordance with the responsible official's duty. Thus, a written explanation of that decision is not required. Based on the Court's review of the record, the

---

[3] Defendants' argument that the Court should not address plaintiffs' claims regarding whether defendants' actions violated the NEPA is well taken. Plaintiffs' Complaint does not allege that the defendants' violated the NEPA in the determination of when to provide the opportunity for public comment As such, plaintiffs are not entitled to now argue in that regard.

determination that receiving public comment after publication of the Scoping Report and again after publication of the Proposed Action Notice was not arbitrary or capricious, nor was it a violation of the Appeals Reform Act.

## The National Forest Management Act

Plaintiffs contend that the Forest Service failed to make a determination that clear cutting was the "optimal method" of achieving the goals of the management plan, as required by the NFMA.

The NFMA, the statute which governs the administration of the National Forest System by the Forest Service, directs the Forest Service to develop a land and resource management plan (Forest Plan) for each unit of the System. 16 U.S.C. § 1600(a). These Forest Plans establish goals and objectives for the individual units of the National Forest System and provide specific standards and guidelines for management of forest resources. The Forest Service implements the Forest Plan through site-specific projects; it assesses each such action to determine comparability with the Forest Plan and NEPA. *Central S.D. Coop. Grazing Dist. v. Secretary of the U.S. Dept. Of Agric.*, 266 F.3d 889, 892-93 (8th Cir. 2001); *Sierra Club v. Robertson*, 28 F.3d 753, 755 (8th Cir. 1994).

Plaintiffs argue that the decision to use clearcutting is arbitrary and capricious. In that regard Plaintiffs contend that defendants did not look at three

stands on which clearcutting was approved. They further contend that it is arbitrary and capricious for the Forest Service to use inapplicable site-specific language from another timber sale.

The significant record before the Court establishes that the Forest Service's Siviculurist evaluated each stand of trees that was proposed for treatments in order to determine the harvest method that would best meet the Forest Plan objectives. He conducted field reviews of the area and considered many different treatment methods. His conclusions are based on Forest Service records and his evaluation of the field reviews. Plaintiffs' argument to the contrary, based on lack of notes, is therefore unavailing. Further, plaintiffs' continued argument that the Forest Service "cut and pasted" site-specific language from the Eastwood II EA in support of their position deserves no further comment than to observe that this was merely an editorial error and bears no weight on the Forest Service's determination of the optimum treatment to achieve management objectives for the area. Plaintiff's argument that the notes only discuss silviculture does not demonstrate that the Forest Service's decisions violate the NFMA.

**National Environmental Policy Act**

Under the NEPA, agencies must examine all reasonable alternatives to the proposed project. 42 U.S.C. § 4332(2)(C)(iii); 40 C.F.R. § 1502.14. Plaintiffs

argue that the Forest Service violated the NEPA by not examining reasonable alternatives to the clearcut method such as uneven-aged management. The record, however, evidences facts and circumstances contrary to this argument. The Forest Service considered a variety of alternatives. Three alternatives were given detailed consideration. Of the portion of the stands where clearcutting was proposed, it was determined that clearcutting was the optimum treatment because of the "significant component of mature, low quality or high-risk trees in the red oak group." Further, clearcutting was considered to be the optimum method of the Forest Plan's objective to provide 8% to 15% of 0-9 year old habitat in the management prescription where the Northeast Corner Project is located. In analyzing the optimum method for the Northeast Corner Project, the record establishes that the Forest Plan's habitat objectives were considered in deciding to eliminate the uneven-aged management-only alternative from detailed consideration; this alternative would not meet the wildlife habitat objectives of the Project. Analyses were made and, clearly, a range of alternatives were considered by the Forest Service.

## Conclusion

This Court has engaged in a substantial inquiry of the administrative record, as it must under the APA. However, under the limited standard of review to which the Court must adhere, that record establishes that defendants' actions were neither

arbitrary nor capricious. Defendants have complied with the statutory requirements of the ARA, NFMA and the NEPA with respect to the Northeast Project. As such, they are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Summary Judgment, [Doc. # 20], is denied.

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment, [Doc. # 22], is granted.

A separate judgment is entered this same date.

Dated this 18th day of November, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE